UNION TRUST CO. v. WHITE MOTOR CO.

Circuit Court of Appeals, Sixth Circuit.
April 19, 1927.

No. 4378.

1. Patents ⬅324(5⅝)—Finding of trial judge against prior date of invention will be accepted, unless evidence decidedly preponderates against it.

Conclusion of trial court on the question of invention by plaintiff patentee before the effective date of a prior foreign patent, a question of fact determined on conflicting evidence, including that of a circumstantial nature, the testimony being substantially all taken in open court, must be accepted by the appellate court, unless the evidence decidedly preponderates against it.

2. Patents ⬅328—Finding that invention of 1,342,687, for double reduction drive mechanism for automobiles, was not prior to foreign patent, held sustained by evidence.

Finding that the invention of Melanowski patent, No. 1,342,687, for double reduction drive mechanism for automobiles, was not prior to effective date of prior foreign patent, held sustained by the evidence.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by the Union Trust Company against the White Motor Company. From a decree dismissing the bill (22 F.[2d] 816), plaintiff appeals. Affirmed.

Ray S. Gehr and William L. Day, both of Cleveland, Ohio (Edward Rector and Day & Day, all of Cleveland, Ohio, on the brief), for appellant.

F. O. Richey, of Cleveland, Ohio, for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This is a suit for infringement of claims 7, 13, 15, 18, and 19, of United States patent No. 1,342,687, June 8, 1920, to Melanowski—now the property of plaintiff appellant. The invention of the patent relates generally to socalled double reduction drive mechanism for automobiles, with especial reference to trucks having a capacity of three to five tons and upwards. We print in the margin claim 7 of the patent,[1] which is sufficiently characteristic.

---

[1] "In power transmitting mechanism of the class described, a traction wheel having an enlarged gear-receiving section [the hub] at its center, a peripheral section [the rim] and connections between said sections [the spokes], a nonrotatable axle-receiving section extending into said gear-receiving section, and having a gear cage fixed at its outer end and disposed within said gear-receiving section thereon, and placing the load and thrust strains and stresses of said wheel on said axle-receiving section, a driven shaft extending through said axle-receiving section, reduction gearing disposed in said enlarged gear-receiving section for transmitting power thereto from the outer end of said driven shaft and including a driving pinion, an idler gear, and an internal gear, and a supporting bearing for the outer end of said driven shaft carried by said gear cage, the mounting of said gear-receiving section on said nonrotatable axle-receiving section being substantially dust proof and lubricant tight."

The defendant appellee, White Motor Company, is a manufacturer of heavy capacity automobiles. It not only denies infringement, but contends that the patent in suit is invalid both for lack of invention, in view of the prior art, and because anticipated by the French patent to Renault, applied for September 13, 1915, delivered (became effective) February 5, 1916. The Melanowski patent was applied for August 21, 1916, and thus more than six months after Renault's effective date.

It would seem plain that, whether or not Renault completely anticipates Melanowski, he so far discloses features of the latter's patent that, if prior in time, infringement cannot be decreed against defendant. A vigorous effort was therefore made to carry the date of Melanowski's invention back of Renault's effective date. The District Judge found that plaintiff did not, by sufficiently convincing proof, sustain that burden. The court was also of opinion that, even if Renault were disregarded, the patent in suit was not infringed (unless by appropriating Melanowski's specific form, which it was thought was not done), in view of the prior art, especially the French patent to Delahaye, who had disclosed "an arrangement of a train of planetary gears at the outer end of the axle and externally of the center of the wheel, thereby effecting transmission through the center of the wheel by means of a shaft rotating at a greater speed and permitting smaller transmission shafts, housing, and axle parts," as well as disclosing and providing a balanced drive with dust and oil proof cover for the gears, so that they may roll in oil. The principle of operation and the results accomplished were found by the court to be the same as in Melanowski. The bill was in terms dismissed for lack of infringement.

[1] Plaintiff's effort to carry Melanowski's invention date back of Renault's effective date, namely, February 5, 1916, presented purely a question of fact to be determined upon conflicting evidence, including that of a circumstantial nature. The testimony was substantially all taken in open court; and the trial court's conclusion must be accepted here unless the evidence decidedly preponderates against it. Pugh v. Snodgrass (C. C. A. 6) 209 F. 325; Vandenburgh v. Truscon Steel Co. (C. C. A. 6) 277 F. 345, 346, 347.

[2] It is satisfactorily established that Melanowski conceived his invention as early as the middle of April, 1916, and used due diligence in perfecting it. There seems no doubt that full-sized working drawings existed as early as June 27, 1916, or nearly 2 months before his application for a patent was made, but more than 4½ months *after* Renault's effective date. Melanowski's affidavit made February 14, 1921, shortly before this suit was begun and before the Renault patent was brought in, states that about the middle of April, 1916 (which was 2 months after Renault's effective date), he laid out and made full-sized drawings of a truck rear axle for heavy duty, and that the first week in May, 1916, he called on the president of defendant company, taking the drawings with him. That officer, however, denied any meeting with Melanowski until in the summer or fall of 1916, and states that Melanowski never showed him any drawings. It also now appears that one of the copies of drawings, from which plaintiff's blueprint of patent drawings was made, bears date October 18, 1915.

But the District Judge, on a careful consideration of the testimony, including other substantial exhibits, reached the conclusion that the date "1915" is "erroneous, if not fraudulent," and that the effort to connect the several drawings presented with the latter part of 1915 had failed. Melanowski's letter to his nephew, written August 29, 1915, states that he was then occupied with a new invention of a rear axle for heavy loads with two reductions, the first "in the center of the axle, and the second in the rear wheels by internal gears." The letter does not, to our minds, clearly disclose the invention of the patent in suit, and does not seem to have been replied to, nor is the envelope produced. It contains, to our minds, nothing particularly significant or informative.

Plaintiff presents, however, the testimony of two witnesses, draftsmen or engineers, or both, who between August, 1915, and January, 1916, worked with Melanowski while the latter was designing a new type of gas car for the Anderson Company, a stranger to this controversy. Both these witnesses testified that during the period of that employment (and thus necessarily before Renault's effective date) Melanowski was also working, on his own account upon the idea of a double reduction drive mechanism inclosed in a rear axle construction, and both identify certain original sketches of Melanowski claimed to disclose his invention of the patent in suit, and which these witnesses testified were shown to them by him and discussed by them with him. These witnesses are plainly disinterested, and the District Judge says that no reason exists to impugn their integrity and good faith.

The judge, however, was of opinion that their testimony as to dates is valueless, except so far as related to the duration of their employment with Melanowski; that not only was it reasonably probable that one or both of them visited Melanowski's office after their employment with him ceased (Melanowski was still at work on the plan of the new gas car), but other reasons are cited suggesting grave doubt as to whether these witnesses were not mistaken in thinking they had ever seen the sketches *now* exhibited to them. Among such reasons are the enumerated facts that neither witness had made any drawings or performed any duty in connection with the actual development in question, and that after the period during which they first saw the drawings which Melanowski showed them they were (only after the lapse of about eight years, and about a week only before the trial began) shown the drawings identified by them on the trial.

The District Judge also calls attention to other facts tending to discredit the genuineness of the pencil sketches identified by these witnesses. For example, the sketches were contained in a bound originally blank scratch book, 27 sheets of which, out of a consecutive 30 sheets, bore pencil sketches. The sketch on page 28 is dated May 14, 1915, that on page 30 is dated July 2, 1915, only two days after Melanowski left defendant's employment.[2]

We think the evidence does not prepon-

---

[2] The trial judge says that, if the testimony of the two witnesses were to have any weight, "these sketches were made late during their term of employment, and could not have been in existence at the dates written thereon. Moreover, these sketches are the last of a series of many in the same book. Substantially all the preceding sketches pertain to the development of the Anderson car. Melanowski did not have his contract with Anderson earlier than August, 1915, and did not complete that car earlier than the spring of 1916. It is probable, and the testimony shows, that every one's energies were concentrated in pushing that project as rapidly as possible to a successful conclusion. It is highly improbable that these sketches, if made at the dates claimed, would be the last in the sketch book. Their position in the book following the Anderson car sketches accords with the probability that Melanowski, as well as all concerned, was during the latter part of 1915 diligently engaged in that work, and would not be giving his serious attention to another invention. The erroneous, not to say fraudulent, dates affixed in Melanowski's handwriting to these and other drawings, is a strongly suspicious circumstance. For example, the sketch, page 3, is dated August 17, 1919; the sketch, page 4, is dated March 27, 1915; the sketch, page 8, is dated May 3, 1915. It is difficult to accept as genuine, on an issue so delicate as priority, sketches so patently misdated."

derate against the District Judge's conclusion. The decree of the District Court must therefore be affirmed.

It thus becomes unnecessary to consider whether the patent in suit would be infringed, if Melanowski had been found to take precedence over Renault.